HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAMETRE MACON,

        Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.,

        Defendant.

CASE NO. C12-260 RAJ

ORDER GRANTING IN PART AND DENYING IN PART UPS'S MOTION TO DISMISS

## I.   INTRODUCTION

This matter comes before the court on defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff Dametre Macon alleges claims of disability discrimination, gender discrimination and retaliation under the Washington Law Against Discrimination ("WLAD"), wrongful discharge in violation of public policy, and violation of the Family and Medical Leave Act ("FMLA") and the Washington Family Leave Act ("WFLA"). UPS moves to dismiss all of Macon's claims without leave to amend.

Having reviewed the memoranda, the complaint, and the record herein, the court GRANTS in part and DENIES in part defendant's 12(b)(6) motion to dismiss.[1]

## II. BACKGROUND

Macon, an Iraq war Army veteran, suffers from post-traumatic stress disorder ("PTSD") and depression. Dkt. # 13 ¶ 7 (First Am. Compl.). Macon began working for UPS as a package handler in November 2007. Dkt. # 13 ¶ 11. Within four months, UPS promoted Macon to part-time supervisor. Dkt. # 13 ¶ 13. Soon after her promotion, Macon observed several co-workers, including other part-time supervisors and managers, involved in the use and sale of prescription and illegal drugs. Dkt. # 13 ¶ 18. In April 2008, Macon reported the drug activity to her superiors. Dkt. # 13 ¶ 19. UPS investigated and eventually terminated two part-time supervisors. Dkt. # 13 ¶ 21.

Macon's manager and other supervisors involved in the drug activity were not terminated. Dkt. # 13 ¶¶ 22-23. They began to harass Macon by taking her supplies, scrutinizing her work, and treating her more harshly than other employees. Dkt. # 13 ¶¶ 24-29. Macon's managers changed her work schedule and gave her extra assignments, making it difficult for her to complete her work. Dkt. # 13 ¶¶ 28-30. Macon reported the harassment to a manager, but UPS took no action to address it. Dkt. # 13 ¶ 33. In May, Macon's request to transfer to a different shift was denied. Dkt. # 13 ¶¶ 35-36. In June, her second request for a transfer was granted, but her schedule was changed to a less desirable weekend shift. Dkt. # 13 ¶¶ 37-38. In August, at the recommendation of her therapist, Macon took medical leave from UPS to treat symptoms of PTSD and depression she experienced as a result of the harassment. Dkt. # 13 ¶ 41.

---

[1] Macon objects, without citation to any authority, to the court's review of two unpublished orders from the Western District of Washington that UPS submitted as exhibits attached to a declaration. Dkt. # 18, Exs. B and C. "The distinction between 'published' and 'unpublished' federal district court decisions is meaningless" and this court may consider "unpublished" district court decisions as persuasive authority. *See Cont'l Western Ins. Co. v. Costco Wholesale Corp.*, Case No. C10-1987 RAJ, 2011 WL 3583226 (W.D.Wash. 2011).

1       In February 2009, Macon informed UPS that she was ready to return to work.
2 Dkt. # 13 ¶ 43.  She gave UPS a note from her psychologist requesting accommodation
3 for her disability.  Dkt. # 13 ¶ 44.  Also in February, Macon filed a charge with the
4 EEOC, alleging harassment and unequal pay.  Dkt. # 13 ¶ 42.  UPS stalled the
5 accommodation process.  Dkt. # 13 ¶ 45.  The EEOC issued a right to sue letter in
6 October.  Dkt. # 13 ¶ 46.  UPS met with Macon in November to discuss her requests for
7 accommodation.  Dkt. # 13 ¶ 47.  On December 24, UPS informed Macon that it could
8 not meet her requests and terminated her employment.  Dkt. # 13 ¶¶ 49-50.

### III. ANALYSIS

**A.     Legal Standard**

Federal Rule of Civil Procedure 8 requires that each claim in a pleading be supported by "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Rule 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering whether a complaint states a claim, the court assumes the truth of the complaint's factual allegations and credits all reasonable inferences arising from its allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Although this standard requires that a claim be 'plausible on its face,' it does not require that a complaint contain 'detailed factual allegations.'" *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909, at *2 (9th Cir. Sept. 12, 2012) (quoting *Iqbal*, 556 U.S. at 678).  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very

remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

Even when a complaint fails to state a claim for relief, however, "[d]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by an amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The standard for granting leave to amend is generous. The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir. 2011).

**B.    Discrimination Under the WLAD (RCW 49.60.180)**

The WLAD states that "it is an unfair practice for any employer to discriminate against any person in compensation or any other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability." RCW 49.60.180(3). Under RCW 49.60.180, a disabled employee has a cause of action for at least two different types of discrimination. *Riehl v. Foodmaker, Inc.*, 152 Wash. 2d 138, 145, 94 P.3d 930 (2004). The employee may file a disparate treatment claim if the employer discriminated against the employee because of the employee's condition. *Id.* The employee also may allege failure to accommodate where the employer failed to take steps "reasonably necessary to accommodate the employee's condition." *Id.* A plaintiff may maintain both causes of action.[2] *Id.* Macon does so here.[3]

---

[2] UPS argues that Macon cannot bring a claim for both disparate treatment and failure to accommodate. The authority UPS cites does not support this proposition. *Pulcino v. Federal Express Corp.*, 141 Wash. 2d 629, 640, 9 P.3d 787 (2000), *overruled in part on other grounds by McClarty v. Totem Elec.*, 157 Wash. 2d 214, 137 P.3d 844 (2006), simply explains the difference between the two claims.

[3] Macon cites a number of allegations of harassment in support of her claim for disparate treatment, but Macon does not allege a separate cause of action for hostile work environment. Each instance of harassment is not a separate adverse employment action.

1. <u>Disability Disparate Treatment</u>

A prima facie case of disparate treatment disability discrimination has four elements: 1) Plaintiff was disabled; 2) Plaintiff was able to perform her job duties; 3) Plaintiff was fired and not rehired; and 4) Plaintiff was replaced by someone who was not disabled. *Riehl*, 152 Wash. 2d at 150.

UPS only challenges the second and fourth factors. With respect to the second factor, UPS argues that Macon failed to allege that she was able to perform her job duties at the time of her termination. Dkt. # 17 at 5. UPS argues that Macon's allegations that she had not done the job in sixteen months and that she could not do the job without accommodation are fatal to her claim.

UPS cites no authority for the proposition that the WLAD would allow an employer to terminate an employee based on the presence of a disability if the employee is able to perform the job with an accommodation. UPS only cites a proviso in RCW 49.60.180(1), which states that the WLAD does not prohibit an employer from refusing to hire a disabled person if the disability prevents the person from performing the job. Under RCW 49.60.180(1), it is an unfair practice for any employer:

> (1) to refuse to hire any person because of . . . the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, unless based upon a bona fide occupational qualification: PROVIDED, <u>That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved</u>.

(emphasis added).

Although subsection (2), covering discharges, does not contain the proviso, the Washington Administrative Code states that the proviso applies to "all circumstances where ability to do the job is material." WAC 162-22-050(3). Therefore, two things must occur before an unfair practice is committed: the employer must have refused to hire or otherwise discriminated because the person has a disability, and the disability

must not be of a nature that prevents the person from properly performing the particular job. WAC 162-22-050(2); *Clarke v. Shoreline School Dist.*, 106 Wash. 2d 102, 720 P.2d 793 (1986).

In determining whether the disability prevents the plaintiff from performing a particular job, Washington courts consider whether the plaintiff is unable to perform an "essential function" of the job. For example, in *Clarke*, the court held that the termination of a special education teacher did not violate the WLAD where his disability, legal blindness and profound hearing loss, "constituted 'a hazard to the welfare and safety of students under [Clarke's] charge,'" thus preventing him from performing essential functions of the job. *Clarke*, 106 Wash. 2d at 119. In *Dedman v. Washington Personnel Appeals Board*, the plaintiff was found to be unable to perform the job of a correction officer where her back and knee injury prevented her from using force to subdue inmates, an essential function of the job. 98 Wash. App. 471, 481-82, 989 P.2d 1214 (1999).

Here, Macon alleges that the essential function of her job was to "ensure proper sorting of irregular sized boxes in a timely manner." Dkt. # 13 ¶ 16. Macon alleges that "[t]he stress of the supplies taking, the assignment of extra, difficult tasks, the poor treatment from co-workers and supervisors, the initial denial of her transfer request and the final schedule change combined to exasperate and 'light up' Dametre's disability (PTSD and depression)." Dkt. # 13 ¶ 40. PTSD and depression caused Macon to be fatigued, on edge, and distant, and have trouble interacting with others. Dkt. #13 ¶¶ 8-9. Nevertheless, Macon alleges that while experiencing symptoms of PTSD and depression, she was still able to perform the job: "[e]ven then, Dametre's overall work product (taking all of her time at UPS even after the retaliation) was satisfactory and above par compared to other similarly situated employees." Dkt. # 13 ¶ 60. These allegations are sufficient to allege that Macon was able to perform the essential job function of sorting irregular boxes and that her disability did not prevent her from performing her job.

With respect to the fourth factor, Macon alleges that she "was replaced by a non-disabled person." Dkt. # 13 ¶ 62. This allegation is sufficient to establish the fourth element for the purposes of this motion.

2. Failure to Accommodate

A prima facie case of a failure to accommodate claim has four elements: (1) the employee had a disability that substantially limited her ability to perform the job; (2) the employee was qualified to perform the job; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Riehl*, 152 Wash. 2d at 145.

UPS only challenges the fourth element. UPS argues that Macon's complaint fails to state a claim because she does not specifically allege the accommodations she requested. Dkt. # 17 at 14-15. UPS asserts that Macon must allege facts demonstrating that her requests for accommodation were reasonable or required by the WLAD. UPS does not cite any authority supporting this assertion.

Employers have an affirmative obligation to reasonably accommodate the sensory, mental, or physical limitations of disabled employees unless the accommodation can be shown to impose an undue hardship on the employer's business. *Doe v. Boeing Co.*, 121 Wash. 2d 8, 846 P.2d 531 (1993). But the WLAD does not require an employer to offer the employee the precise accommodation she requests. *Doe*, 121 Wash. 2d at 20. Rather, "the scope of an employer's duty to accommodate an employee's condition is limited to those steps reasonably necessary to enable the employee to perform his or her job." *Doe*, 121 Wash. 2d at 19. "Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible, interactive process." RCW 49.60.040(7)(d); *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wash. App. 765, 779, 249 P.3d 1044 (2011). In the case of depression or PTSD, a doctor's note requesting

accommodation is sufficient to allege that accommodation is medically necessary. *Riehl*, 152 Wash. 2d at 148.

In the complaint, Macon alleges that when she was ready to return to work, she presented UPS with a note from her psychologist with details of the "type of accommodations" that would allow her to successfully return to work. Dkt. # 13 ¶ 44. This is sufficient to allege that accommodation was medically necessary. Macon further alleges that UPS did not engage in the necessary inquiry to determine a reasonable accommodation. Dkt. # 13 ¶ 67. Instead, "UPS intentionally stalled the accommodation request process." Dkt. # 13 ¶ 45. Although UPS acknowledged that it considered the request outlined by Macon's psychologist, Macon alleges that UPS did not inquire further to determine whether alternative accommodations would be effective and reasonable. Dkt. # 13 ¶¶ 48, 67. Macon alleges that "UPS failed to inquire of Dametre's medical provider if it felt that the requests for accommodation were unreasonable and failed to seek alternative accommodations other than the ones requested." Dkt. # 13 ¶ 67. In December, after several requests for accommodation and more than nine months after her initial request, UPS informed Macon that it could not meet her request for accommodation. Dkt. # 13 ¶ 49. These allegations are sufficient to allege that UPS did not meet its affirmative obligation to determine a reasonable, available accommodation for Macon's disability.

    3. Gender Discrimination

A prima facie case of gender discrimination alleging disparate treatment has four elements: (1) the employee is a member of a protected class; (2) the employee is qualified for the employment position or performing substantially equal work; (3) the employee suffered an adverse employment action; and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Davis v. West One Auto. Grp.*, 140 Wn. App. 449, 459, 166 P.3d 807 (2007).

Macon is a woman. Dkt. # 13 ¶ 1. She alleges that before her leave of absence, she was qualified for her job as a part-time supervisor and performing the job as well or better than her co-workers. Dkt. # 13 ¶¶ 56-58, 60. She alleges that she worked with other part-time supervisors and most of her co-workers were male. Dkt. # 13 ¶¶ 14, 23. Macon alleges that she was paid less than similarly situated male co-workers and the disparity was a result of gender discrimination. Dkt. # 13 ¶ 61.

UPS argues that Macon fails to state a claim of gender discrimination because she does not allege facts explaining her allegation that the male co-workers were "similarly situated." Dkt. # 17 at 7. UPS asserts that because it can provide a "much more plausible explanation" than gender discrimination for the pay disparity, Macon's claim does not rise to the level of plausibility. This is not the standard.

The Ninth Circuit recently addressed the pleading standard in discrimination cases in *Sheppard v. David Evans and Associates*. There, the plaintiff alleged that she was over forty, she performed her job well, she was discharged, and five younger comparators kept their jobs. *Sheppard*, 2012 WL 3983909, at *1. In support of the comparator allegation, Sheppard asserted only that "there were five comparators at Evans in Oregon of which Sheppard was the oldest," and "[Sheppard's] youngest comparators kept their jobs." *Id*. The court concluded that the allegation that the comparators kept their jobs "gives rise to an 'inference of age discrimination' because it plausibly suggests that Evans had a continuing need for [Sheppard's] skills and services [because her] various duties were still being performed" and "[i]t also plausibly suggests that employees outside her protected class 'were treated more favorably' than Sheppard." *Id*. at *3 (citations omitted). The court concluded that Sheppard's allegations were sufficient to state a claim of discrimination, citing the Seventh Circuit in support of its conclusion:

> [I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet [her] burden than it was before the [Supreme] Court's recent decisions [in *Iqbal* and *Twombly* ]. A plaintiff who believes that she has been

passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in [the] plaintiff's case.

*Id*. (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404–05 (7th Cir. 2010)).

Likewise, Macon's allegation that she was paid less than similarly situated male co-workers suggests that the male co-workers were doing similar work, but were paid more. These allegations are sufficient to state a plausible claim of gender discrimination.

**C. Retaliation under the WLAD**

The WLAD prohibits an employer from taking an adverse employment action against an employee based on protected conduct. RCW 49.60.210; *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 374, 112 P.3d 522 (2005). To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in statutorily protected activity; (2) defendants took some adverse employment action against her; and (3) there is a causal connection between the protected activity and the discharge. *Corville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 439, 869 P.2d 1103 (1994).

Macon alleges that she was terminated in retaliation for filing an EEOC complaint. UPS argues that Macon has failed to allege a causal connection between the EEOC filing in February 2009 and her termination ten months later.

Proximity in time between the protected activity and the discharge may suggest retaliatory motivation. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wash. App. 774, 799, 120 P.3d 579 (2005). However, a court may not infer causation from temporal proximity unless the time between the employer's knowledge of the protected activity and the adverse employment action is very close. *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a lapse of even three or four months is too long to infer causation)).

Macon argues that she was terminated only one month after the EEOC issued a right to sue letter, thus demonstrating that she was terminated in retaliation for filing the

EEOC complaint.  However, Macon must show proximity between the *protected activity* and her termination.  The issuing of the right to sue letter by the EEOC is not protected activity. *Clark County Sch. Dist.*, 532 U.S. at 273.  Macon relies entirely on temporal proximity to establish causation.  Macon's termination ten months after she filed an EEOC charge, on its own, does not indicate a causal connection sufficient to support a claim of retaliation.

Accordingly, the court GRANTS UPS's motion to dismiss plaintiff's retaliation claim with leave to amend.

**D.    Wrongful Discharge in Violation of Public Policy**

To state a claim for wrongful discharge in violation of public policy, a plaintiff must allege four factors. The plaintiff must allege (1) that a clear public policy exists (the clarity element); (2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element); (3) that the public policy-linked conduct caused the dismissal (the causation element); and (4) that the defendant has not offered an overriding justification for the dismissal (the absence of justification element). *Cudney v. ALSCO, Inc.*, 172 Wash. 2d 524, 529, 259 P.3d 244 (2011) (italics and brackets omitted).

Macon alleges wrongful discharge in violation of public policy based on taking medical leave.  Dkt. #13 ¶ 75.  Macon also alleges that she was terminated for reporting drug use by co-workers and supervisors in the workplace and for requesting accommodation. Dkt # 13 ¶¶ 75-76.  UPS argues that Macon has failed to establish the jeopardy and causation elements of wrongful discharge in violation of public policy for these allegations.

A claim of public policy-based wrongful discharge is a narrow exception to Washington's general rule of employment at will. *Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 232, 685 P.2d 1081 (1984).  Washington statutes and case law are the primary sources of Washington public policy. *Sedlacek v. Hillis*, 145 Wash. 2d 379, 388,

36 P.3d 1014 (2001). Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act; (2) performance of a public duty or obligation; (3) exercise of a legal right or privilege; or (4) in retaliation for reporting employer misconduct. *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wash. 2d 200, 208, 193 P.3d 128 (2008).

In order to plead the jeopardy element, a plaintiff must allege "that he or she 'engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy.'" *Korslund v. Dyncorp Tri–Cities Services, Inc.*, 156 Wash. 2d 168, 181–82, 125 P.3d 119 (2005) (quoting *Hubbard v. Spokane County*, 146 Wash. 2d 699, 713, 50 P.3d 602 (2002)). The plaintiff must allege "that other means of promoting the public policy are inadequate and that the actions the plaintiff took were the '*only available adequate means*' to promote the public policy." *Danny*, 165 Wash. 2d at 222 (emphasis in original).

Macon alleges wrongful discharge in violation of public policy based on taking medical leave. Macon relies on *Roberts v. Dudley*, 140 Wash. 2d 58, 71, 993 P.2d 901 (2000) to argue that a statute establishes an actionable public policy even if the conduct complained of does not fall within the purview of the statute.[4] In *Roberts*, the plaintiff sued her employer for gender discrimination after she was terminated because she was pregnant. *Id.* at 61. The court held that although the employer was exempt under the WLAD because it had fewer than eight employees, the statute expresses a strong public policy protecting the right of all inhabitants of the state to be free from gender discrimination. *Id.* at 68-9.

As discussed below, Macon may not recover under FMLA or WFLA because she was not employed with UPS for the minimum twelve months before taking leave. Nevertheless, WFLA and FMLA both express a clear public policy of protecting an

---

[4] *Roberts* addressed the clarity element and did not address jeopardy or causation.

employee's right to reasonable medical leave. RCW 49.78.010 (The legislature "declares it to be in the public interest to provide reasonable leave for medical reasons."); 29 C.F.R. § 825.101 ("FMLA is intended to allow employees to balance their work and family life by taking reasonable unpaid leave for medical reasons."). Because the public policy expressed in these statutes establishes a right to take reasonable medical leave, Macon's conduct of taking medical leave directly relates to clear public policy. Taking medical leave is the intended means of promoting the public policy. Further, Macon's alleged termination for taking reasonable medical leave would discourage others from exercising this right. *See Gardner v. Loomis Armored Inc.*, 128 Wash. 2d 931, 946, 913 P.3d 377 (1996).

However, Macon alleges only that she took medical leave and that she was terminated for taking such leave. Dkt. # ¶¶41, 79, 80. Macon does not allege a clear public policy in her complaint. Nor does she include facts sufficient to allege that "discouraging the conduct in which he or she engaged would jeopardize the public policy," as is required to plead the jeopardy element of a wrongful discharge claim. Accordingly, Macon's allegations are not sufficient to allege wrongful discharge based on taking medical leave.

Macon next asserts that she was terminated for reporting drug use in the workplace. The Washington State Supreme Court recently addressed a similar claim in *Cudney v. ALSCO, Inc.*, 172 Wash. 2d 524, 259 P.3d 244 (2011). There, the plaintiff claimed he was terminated in retaliation for reporting that the general manager of his branch was intoxicated while driving a company car during working hours. *Id*. at 526. The court rejected the claim, holding that the public policies of promoting workplace safety and protecting the public from drunk drivers were adequately protected by the Washington Industrial Safety and Health Act (WISHA) and state drunk driving laws. *Id*. at 530-31. The court's holding on the latter issue is particularly instructive:

> For Cudney to succeed in this claim, he must prove that telling his manager about Bartich's drunk driving is the "only available adequate means" to promote the public policy of protecting the public from drunk driving. [*Danny*, 165 Wash. 2d at 222]. For this to be true, the criminal laws, enforcement mechanism, and penalties all have to be inadequate to protect the public from drunk driving. Cudney admits that he did not call 911 and inform the police of Bartich's drunk driving. . . . There is a huge legal and police machinery around our state designed to address this very problem. It is very hard to believe that the "only available adequate means" to protect the public from drunk driving was for Cudney to tell his manager about Barich's drunk driving.

*Id*. at 536-37.

The court noted that Cudney did not report the drunk driving to the police, finding that "we might have a different case if Cudney acted pursuant to or in service of enforcement of the state's DUI laws and faced termination for that. There, Cudney might be able to argue that his action 'was necessary for the effective enforcement of the public policy.'" *Id*. at 537 n. 4 (quoting *Korslund*, 156 Wash. 2d at 181). The court held that "[u]nder a strict adequacy analysis, Cudney simply cannot show that having law enforcement do its job and enforce DUI laws is an inadequate means of promoting the public policy." *Id*. at 537.

Likewise, Macon cannot allege that reporting drug use in the workplace was the "only available adequate means" to promote the public policy of eliminating the illegal sale and consumption of controlled substances. Because, as in *Cudney*, "[t]here is a huge legal and police machinery around our state designed to address this very problem," Macon cannot allege that her internal report to her superiors of drug activity in the workplace furthers public policy. Like Cudney, Macon did not report her observations to the police and she was not terminated for assisting law enforcement in furtherance of public policy.

Macon argues that because Washington law does not otherwise provide for a claim of retaliation for whistle blowing, "there is no other alternative" means of protecting public policy. *Id*. But, as the *Cudney* court emphasized, "it is the public policy that must

be promoted, not [the plaintiff's] individual interests. *Id.* at 538 "The other means of promoting the public policy need not be available to a particular individual so long as the other means are adequate to safeguard the public policy." *Id.* (quoting *Hubbard*, 146 Wash. 2d at 717).

Macon also alleges that it is public policy in Washington to protect those with disabilities, even where they are not protected by statutes such as the WLAD or FMLA. Dkt. # 13 ¶ 75. Macon's request for accommodation is protected under the WLAD. Because the WLAD provides a cause of action, Macon has not shown that the WLAD is "inadequate to protect public policy." *See Cudney*, 172 Wash. 2d at 530-31.

As to the causation element, Macon cannot show a causal link for reporting drug activity or taking medical leave. Macon reported workplace drug activity to her employer in April 2008. Dkt. # 13 ¶ 19. She took medical leave in August 2008. Dkt. # 13 ¶ 41. She was terminated in December 2009. Dkt. # 13 ¶ 49. As discussed above, a court may not infer causation unless the time between the employer's knowledge of the protected activity and the termination is very close. *Clark County Sch. Dist.*, 532 U.S. at 273. A gap of twenty months between Macon's report and her termination, and a gap of sixteen months between taking the medical leave and the termination, without any other allegations, does not provide a sufficient causal link.

Because Macon cannot allege wrongful discharge in violation of public policy based on reporting drug activity or requesting accommodation, the court GRANTS UPS's motion to dismiss the claim on those bases without leave to amend. The court also GRANTS UPS's motion to dismiss plaintiff's claim for wrongful discharge in violation of public policy based on taking medical leave with leave to amend the complaint.

E.     **FMLA/WFLA Claims**

To be considered eligible under FMLA or WFLA, a person must be employed (i) for at least twelve months by the employer with respect to whom leave is requested under and (ii) for at least one thousand two hundred fifty hours of service with the employer

during the previous twelve-month period. RCW 49.78.020(4)(a); 29 C.F.R. § 825.110(a). In her complaint, Macon alleges that she began work with UPS in November 2007 and she went on leave on August 28, 2008. Dkt. # 13 ¶¶ 11, 41. Macon was employed with UPS for nine months before she went on medical leave. Because she was not employed with UPS for at least twelve months, she was not eligible for protected leave under FMLA and WFLA.

In the alternative, Macon alleges that UPS failed to give her notice that she was not eligible for leave under FMLA.[5] In her complaint, Macon alleges "UPS failed to follow the notice requirements set forth in 29 CFR 825, § 825.300 and therefore is not entitled to a limitation of 12 weeks of FMLA leave, nor any other requirement of the employee under the FMLA." Dkt. # 13 ¶ 93.

When an employee expresses an interest in exercising rights under FMLA, an employer has an obligation to provide the employee with notice of eligibility. 29 C.F.R. § 825.300(b)(1). The regulation explicitly provides that "[f]ailure to follow the notice requirements set forth in this section may constitute interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). Nevertheless, an employee must show prejudice in the form of interference with or restraint or denial of the ability to exercise FMLA rights. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). A technical violation is not sufficient to entitle an employee to any recovery. 29 C.F.R. § 825.300(e) ("An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.").

---

[5] Macon does not allege a similar violation under WFLA.

Because Macon alleges a violation but she does not allege prejudice, her claim fails. At the time Macon took leave, she had worked for UPS for nine months and was three months short of eligibility. The court cannot reasonably infer from the allegations in the complaint that Macon would have waited three months to take leave in order to be eligible for FMLA.

Given the plaintiff's allegations as to the violation of FMLA and WFLA, the court finds that any future amendments would be futile. Accordingly, the court GRANTS defendant's motion to dismiss plaintiff's claims under FMLA and WFLA without leave to amend. As to Macon's FMLA notice claim, the court GRANTS defendant's motion to dismiss with leave to amend.

## IV. CONCLUSION

For all of the foregoing reasons, the court GRANTS in part and DENIES in part UPS's motion to dismiss under Rule 12(b)(6). The court GRANTS UPS's motion to dismiss Macon's claims for retaliation, wrongful termination in violation of public policy based on taking medical leave, and violation of the notice requirement under FMLA with leave to amend. The court GRANTS UPS's motion to dismiss Macon's claims for wrongful discharge in violation of public policy based on reporting drug activity and requesting accommodation, and violation of FMLA and WFLA without leave to amend. The court DENIES UPS's motion to dismiss Macon's claims for disability disparate treatment, failure to accommodate, and gender discrimination.

Dated this 5th day of November, 2012.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge